EDITH M. LAMB et al., by Guardian ad Litem, Appellants, *v.*
JESSIE M. LAMB, Respondent.

L. died in 1885, leaving defendant, his widow, and plaintiffs, his three
children, who were all under the age of fourteen, him surviving. After
such death the widow and children continued to live in the dwelling
house of the deceased, she taking care of the children and acting toward
them as natural guardian. W. was appointed their general guardian
upon the petition of defendant ; this stated that the infants resided in
the house and that no rent arose therefrom. In 1891 W. procured
himself to be appointed guardian *ad litem* for the children, and as such
brought this action to recover for the use and occupation of the dwelling
house. It appeared that soon after the appointment of W. as general
guardian he agreed to allow defendant $1,000 a year for the main-
tenance and clothing of the children. No agreement was made for the
payment of rent by defendant, and no demand was made therefor until
a few days before the commencement of the action, and up to that time
W. not only acquiesced in defendant's residence in said house, but con-
sented to and advised it, and defendant's evidence showed and the jury
found that it was expressly agreed that no rent was to be charged. *Held*,
that the action was not maintainable.
*It seems*, that so far as the complaint should be held to be one under the
statute (1 R. S. 748, § 2) to recover rent for the use and occupation the
action could not be maintained without proof of an agreement, express
or implied, to pay rent.
The testimony of defendant and W. was conflicting as to the agreement
between them. Defendant was permitted to prove, under objection and
exception, that just prior to the time when W. made the demand for
rent he had a quarrel with defendant in which he made threats against
her. *Held*, no error ; that the testimony was admissible as showing
the feeling of W. against defendant and so as affecting his credibility
as a witness.
Reported below, 76 Hun, 186.

(Argued May 22, 1895; decided June 11, 1895.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department, entered upon an order
made February 13, 1894, which affirmed a judgment in favor
of defendant entered upon a verdict, and also affirmed an
order denying a motion for a new trial.

This action was brought by plaintiff, as guardian *ad litem*
of the infant children of James Lamb, deceased, to recover

for the use and occupation of certain real estate belonging to said infants.

The facts, so far as material, are stated in the opinion.

*E. Countryman* and *J. F. Crawford* for appellants. The court erred in ruling that the action would not lie to recover the value of the use and occupation in the absence of an agreement, express or implied, between the guardian and the defendant to pay therefor. (*Allen* v. *Sayer*, 2 Vern. 368, 369; *Bennett* v. *Whitehead*, 2 P. Wms. 644; *Dormer* v. *Fortescue*, 3 Atk. 124, 128, 129; *Hicks* v. *Sallitt*, De G., M. & G. 782; *Boylon* v. *Deinzer*, 45 N. J. Eq. 485; *Drury* v. *Connor*, 1 H. & Gill, 220, 230; *Van Epps* v. *Van Deusen*, 4 Paige, 64, 71; *Evans* v. *Pearce*, 15 Gratt. 513; *Martin* v. *Fielder*, 82 Va. 455, 458, 459; *Davis* v. *Harkness*, 6 Ill. 173, 181, 182; *Doe* v. *Kien*, 7 D. & E. 382; *Quinton* v. *Frith*, 2 Ir. Eq. 396; *Morgan* v. *Morgan*, 1 Vern. 489; *Pennington* v. *Fowler*, 7 N. J. Eq. 343; *Alston* v. *Alston*, 34 Ala. 15; *Espey* v. *Lake*, 15 Eng. L. & Eq. 579; *Boylon* v. *Boylon*, 45 N. J. Eq. 485, 493; *Heath* v. *Waters*, 40 Mich. 473; Schouler's Dom. Rel. § 326; *Peale* v. *Thurmond*, 77 Va. 753; *Bloomfield* v. *Eyre*, 8 Beav. 250; *Pascoe* v. *Swan*, 27 id. 508; *Waters* v. *Clark*, 22 How. Pr. 104; *Morris* v. *Niles*, 12 Abb. 103; *Ten Eyck* v. *Hotaling*, 12 How. Pr. 523; *Lounsbury* v. *Purdy*, 18 N. Y. 515, 521; *Reeder* v. *Sayre*, 70 id. 181, 190; *N. Co.* v. *S. Co.*, 72 Hun, 158; *Rochester* v. *Pierce*, 1 Camp. 467; *Hull* v. *Vaughan*, 6 Price, 157; *Newport* v. *Saunders*, 3 B. & A. 411; *Hellier* v. *Silcox*, 98 L. J. [Q. B.] 295; *Smith* v. *Eldridge*, 15 C. B. 236; *Gibson* v. *Kirk*, 1 Q. B. [1 Ad. & El.] [N. S.] 850, 855; *Beverley Case*, 6 Ad. & El. 839; *Eppes* v. *Cole*, 4 Hen. & M. 171; *Sutton* v. *Mandeville*, 1 Munf. 407; 1 Chitty on Cont. [11th ed.] 511–513; *Preston* v. *Hawley*, 139 N. Y. 300.) The opinion of the General Term is founded upon a plain misapprehension of the facts established by the verdict. Under the charge of the trial judge, the only issuable fact found by the jury was, that there was no agreement, express or implied, for the payment

of rent. Every other fact in dispute was left unsettled and undetermined, as the court held, in terms, that in the absence of such an agreement, the plaintiffs could not recover. But the General Term have nevertheless affirmed the judgment below upon three assumptions of fact, none of which is supported by the verdict. (*Jackson* v. *Sears*, 10 Johns. 436; *Torry* v. *Black*, 58 N. Y. 185, 186; *Howell* v. *Mills*, 53 id. 322; *Sherman* v. *Wright*, 49 id. 228; *Foley Case*, 138 id. 333; *In re Wendell*, 32 Hun, 545; *Knothe* v. *Kaiser*, 2 id. 515; *In re Kane*, 2 Barb. Ch. 375; *Beardsley* v. *Hotchkiss*, 30 Hun, 607, 618; *Kelaher* v. *McCahill*, 26 id. 149; *Clark* v. *Montgomery*, 23 Barb. 465; Tyler on Infancy, 292–298; *Dedham* v. *Natick*, 16 Mass. 135; *Nightingale* v. *Wittington*, 15 id. 272–274; *Furman* v. *Van Sise*, 56 N. Y. 435; *Taylor* v. *Hill*, 87 Wis. 669.)

*Matthew Hale* and *Henry A. Strong* for respondent. The plaintiffs made out no case against the defendant, and should have been non-suited. (*Smith* v. *Stewart*, 6 Johns. 46; *Benjamin* v. *Benjamin*, 5 N. Y. 383, 388; *Thompson* v. *Bowe*, 60 Barb. 463; *Sylvester* v. *Ralston*, 31 id. 286; *Hall* v. *Southmayd*, 15 id. 32, 36; *Preston* v. *Hawley*, 101 N. Y. 586, 588; 139 id. 296, 300; *Collyer* v. *Collyer*, 113 id. 442; *Clark* v. *Clark*, 58 Ill. 527; *Whitman* v. *Bowe*, 56 Hun, 141; Schouler's Dom. Rel. [2d ed.] 325, 326; *Wilkes* v. *Rogers*, 6 Johns. 566; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *In re Bostwick*, Id.; *Whipple* v. *Don*, 2 Mass. 415; *Williams* v. *Hutchinson*, 3 N. Y. 312; *Ross* v. *Hardin*, 79 id. 84, 90; *Beardsley* v. *Hotchkiss*, 96 id. 201, 221; *Ryan* v. *Bolts*, 16 J. & S. 152–154; *Elliott* v. *Gibbons*, 30 Barb. 498; *Gladding* v. *Follett*, 2 Dem. 58; 95 N. Y. 652.) The claim of the plaintiffs cannot be sustained upon the theory advanced by appellants' counsel upon the appeal to the General Term and insisted upon in their brief in this court, that the action may be considered as equivalent to a bill in equity for an accounting or as an action of tort. (*Hurd* v. *Miller*, 2 Hilt. 540; *Henwood* v. *Cheeseman*, 3 S. & R. 500; *South-*

*wick* v. *F. N. Bank,* 84 N. Y. 420, 428, 429; *Truesdell* v.
*Sarles,* 104 id. 164, 167; *Reed* v. *McConnell,* 133 id. 425,
434; *People* v. *Townsend,* 19 Hun, 137; 80 N. Y. 656;
*Walter* v. *Bennett,* 16 id. 250; *Matthews* v. *Cady,* 61 id.
651; *Ross* v. *Mather,* 51 id. 108; *Reubens* v. *Joel,* 13 id.
488; *Goulet* v. *Asseler,* 22 id. 225; *Gould* v. *C. C. N. Bank,*
86 id. 75, 83; *Hicks* v. *Sallett,* 3 De G., M. & G. 752.)
There were no errors prejudicial to the plaintiff in the admis-
sion or exclusion of evidence. (*Mead* v. *Shea,* 92 N. Y. 122;
*Stark* v. *People,* 5 Den. 106; *Plet* v. *Bouchard,* 4 Edw. 30;
*Richardson* v. *Northrup,* 66 Barb. 85; *Starr* v. *Craigen,* 24
Hun, 177; *Schultz* v. *T. A. R. Co.,* 89 N. Y. 242, 249.)

PECKHAM, J. James Lamb died in January, 1885, leaving
him surviving the defendant, his widow, and the plaintiffs,
being his three infant children, of the ages of five years, three
years and one year respectively. The deceased left property,
real and personal, of the amount of about $75,000. At the
time of his death he was living in his own house in Cohoes
with his wife and children. Some time in the summer of
1885 James White was, upon the petition of the defendant,
appointed the general guardian of the infants by the surrogate
of Albany county. Soon after his appointment as guardian
he and the defendant had a conversation, the particulars of
which, in some respects, they do not agree upon in their testi-
mony in this case, but they do agree in the statement that the
guardian was to allow Mrs. Lamb, the defendant, a total of
$1,000 a year for the three children for their maintenance
and clothing. The defendant and her children continued to
live in the house from the time of the death of Mr. Lamb,
and no demand had ever been made upon the defendant for
the payment of any rent for the occupation thereof until the
writing of a letter a few days before the commencement of
this action. The defendant has in the meantime taken care
of the children and acted towards them as their natural
guardian. On or about January 29, 1891, Mr. White wrote
Mrs. Lamb a letter, in which he said that recent events had

led him to make an investigation as to the defendant and the estate of Mr. Lamb, and of his rights and duties as general guardian of the property of his children, and he said that he was advised, and that it appeared to be his imperative duty as such guardian, to charge and collect from her a reasonable rent for the house and grounds belonging to the estate and occupied by the defendant since the death of her husband. The defendant refused to pay any rent for the time during which she with her children had occupied the house, and Mr. White then, by order of the county judge, was appointed guardian *ad litem* of the infants, and commenced this action in their name by himself as such guardian *ad litem*.

The complaint alleges that the plaintiffs since January 18, 1885, have been the joint owners of the premises which, since the last of February, 1885, had been used and occupied by the defendant as a residence, and that such use and occupation was reasonably worth the sum of $600 per year, no part of which had been paid although the defendant had been requested so to do by the general guardian of the property and of the plaintiffs. The complaint further alleged that the plaintiffs were under the age of fourteen years and that James White had been duly appointed their guardian *ad litem* by the county judge of Albany county before the commencement of this action. Judgment was demanded that plaintiffs recover of the defendant the sum of $3,575, with interest as stated. The defendant answered, and after alleging the general facts which have been above stated alleged, further, that the general guardian, James White, advised this defendant to continue to reside in the dwelling house with her children, and consented to such residence on her part, and that he had never asked or required the defendant to pay any rent, and that she had occupied the premises since the death of the intestate, her husband, in pursuance of an agreement with the general guardian by which she was not to pay rent, but was to provide a home for the plaintiffs and pay one-third of the taxes and assessments and one-third of the repairs to be made upon the house; and she denied that she had occupied

the house under or in pursuance of an agreement with the general guardian by which she was to pay any rent.

Upon these pleadings the parties went to trial. It will be seen that the suit is somewhat extraordinary in character. The three children of the defendant living with her in the house in which their father and the defendant's husband died, the children being still very young (all of them under the age of fourteen years) are yet in form suing their mother to obtain the payment of rent for her use and occupation of this house, where the plaintiffs have been cared for and nourished by the defendant, their mother. The trial of the case developed the reason for its existence. It appeared that the general guardian a short time before the writing of the letter above alluded to had a personal misunderstanding with the defendant in relation to matters having no connection with this subject in dispute, and immediately thereafter he receives this light in regard to 'his duty as guardian and writes the letter above mentioned making demand for rent, and upon the refusal of the defendant to pay it he procures himself to be appointed guardian *ad litem* and commences this action in the names of these infant daughters of the defendant. There can be no doubt as to the real motive for the action. While it may have no bearing upon the questions of law which are involved herein, it is proper to state the fact because of the exception taken by the plaintiff to the ruling of the court which allowed the defendant to prove a quarrel and the remarks that were made by the general guardian to the defendant at that time. It will be seen that the action, so far as it is shown by the complaint, is one for use and occupation, although there is no allegation therein of any agreement on the part of the defendant to pay rent. The fact is alleged that the plaintiffs are infants under the age of fourteen years, and that James White has been appointed their guardian *ad litem*. Upon the facts which have been stated, and which are substantially all the material ones which were proved, the learned trial judge held that there must be some agreement, either expressed or implied from the circumstances, to pay

rent on the part of the defendant, and if there were no such agreement no recovery could be had. The court submitted to the jury the question whether or not such an agreement had been proved, and it permitted them to infer an agreement to pay rent from the circumstances proved in the case, if they thought such inference were a proper and natural one. The jury found for the defendant, thus negativing the existence of any agreement to pay rent, either expressed or implied. So far as the complaint should be held to be one to recover rent for the use and occupation of these premises in the technical sense of that expression founded on the statute, the action cannot be maintained without proof of some agreement to pay rent, either expressed, or implied from the possession of the lands and other circumstances, so that the conventional relation of landlord and tenant may be said to have existed between the parties. (*Collyer* v. *Collyer*, 113 N. Y. 442; *Preston* v. *Hawley*, 139 id. 296.)

The plaintiffs, however, argue that there is stated in the complaint enough to allow of a recovery in the nature of one for use and occupation founded upon the fact of an entry upon the lands of the infants by one who had not the legal right to occupy as against them, and who, therefore, was to be regarded as entering in the character of a guardian or bailiff of the infants, and liable to account for the rents and profits of the land while so in possession. We assume that if the plaintiffs proved a state of facts from which an illegal entry or intrusion upon the lands of the infants would follow, an action might be maintained by the infants upon their arrival at age, or by their guardian before such time, against the person thus intruding, for the recovery of the rents and profits, or, in other words, for the value of the use and occupation of the lands thus intruded upon.

The cases cited in the very learned and exhaustive brief of the plaintiffs' counsel, would seem to prove this beyond all controversy, and indeed we should say that it was quite a plain proposition. It might be questionable whether the complaint set forth any such cause of action. Aside from the

question of pleading, however, we do not think the facts proved and found show any such case. Upon the death of James Lamb, the intestate, these infant plaintiffs and their mother, the defendant, continued living in the house where they had all resided up to his death. The mother was entitled to dower. They were helpless infants; their mother was their natural guardian. She remained in the house after her husband's death, protecting, caring for and supervising them. Upon such facts we might well hold there was no wrongful, illegal or improper intrusion or entry upon the lands of these infants. They were themselves in actual occupancy of the house, having the benefit thereof and the title thereto; the defendant caring for and protecting them in such occupancy, and not in fact converting any profits to her own use, or receiving any thing as profits of an adverse occupation and possession. There are other facts, however, and it is unnecessary to decide upon the legal effect of the above in the absence of any agreement whatever.

Upon defendant's petition Mr. White was appointed the general guardian of the infants, and in that petition the fact was stated that they were residing in this house and that no rent arose therefrom. This fact was known by the proposed guardian, and from the time of his appointment he had acquiesced in the defendant's residence in that house while taking care of and maintaining the children, and such acquiescence continued until a short time subsequent to the quarrel above mentioned, when the demand for rent was for the first time made. The guardian during this time not only acquiesced in but consented to and advised such residence, and by the finding of the jury, taking into consideration the issues made by the answer of the defendant and the testimony of Mr. White and the defendant, and the manner in which the question was submitted to the jury, it can be stated and maintained that he not only consented to such occupation, but that he agreed affirmatively that no rent should be charged and that the $1,000 allowed, taken in connection with the occupation of the house, should be the allowance to the defendant.

out of the property of the infants for their care, clothing and board. The plaintiffs' counsel alleges that the question whether such agreement existed was not submited to the jury, and that the only question submitted was whether there was an affirmative agreement on the part of the defendant to pay rent, or whether from the circumstances proved in the case the jury should imply one. I think such is not the limitation to be given to the charge of the court. The affirmative agreement was set up in the answer. The guardian and the defendant were both sworn upon the trial. They both testified to a certain conversation taking place in regard to these children and to the amount which should be allowed for their maintenance and upon the subject of rent. The guardian testified distinctly that in that conversation there was no agreement to pay any specified sum for rent, but he alleges that from the course of the conversation it was assumed and stated that the question of rent was one to be submitted to or decided by the surrogate, and that the defendant would pay whatever the surrogate decided was proper. The defendant, in testifying in regard to that conversation, and assuming to give its substantial import, stated that the agreement was that she was to have $1,000 annually for the support of the three children, and that she should keep the children and should have the use of the house until the youngest child came of age, on payment by her of the taxes, insurance and repairs, and he advised her to stay there on those terms. While the learned court charged that there must be found either an express agreement to pay rent or an implied agreement arising from the circumstances submitted to the jury, he left it to the jury to say which of these stories, as given by the guardian and the defendant, they believed. The testimony of the defendant was not a mere denial of that of the guardian, but it was a positive statement as to what the agreement was, and as defendant stated it her evidence was not alone totally inconsistent with and contradictory to that given by the guardian, but it stated an affirmative agreement as to the rent. So, when the testimony of the

guardian and of the defendant on this point was submitted to the jury, and it was left to them to say which of the two witnesses they were to believe, it was in substance and effect a submission of the question as to what was the agreement, and a verdict for the defendant involves a finding, not only that there was no expressed agreement to pay rent, and that there was no implication of an agreement arising out of the circumstances, but a finding that the defendant's evidence was true, and that evidence proved the agreement relied on by defendant. The agreement, as testified to by the defendant and found by the jury, was inconsistent with the idea of any unlawful intrusion upon the lands of the infants or any liability to pay rent therefor. We think the plaintiffs' claim that the testimony was contradictory as to the agreement to pay rent, and that the question of the agreement as sworn to by defendant had not been submitted to the jury, is not justified by the charge of the judge, and the argument of plaintiffs, which is based upon such claim, must fail. Under such circumstances, the continuation of the mother in the house furnishes no basis of a claim for use and occupation. It is further urged that this agreement, even if made, was one which would not bind the infants, unless it were a reasonable one, and that evidence addressed to the question of the reasonable character of the agreement offered by the plaintiffs was excluded by the court upon the objection of the defendant. The evidence which the counsel for plaintiffs claims should have been admitted upon this point was that which he offered for the purpose of showing that the defendant had, on some occasions, taken these children with her to the country and obtained board for them at rates of $3, and even as low as $2.50 per week for each of them. It appeared that the mother upon all these occasions, with one exception, accompanied her children for the purpose of taking care of them. We think the fact if proved was wholly immaterial, and had no bearing whatever upon the question of the reasonable character of the agreement which the defendant alleges was made between herself and this guardian. That she was enabled for

a short time in each summer to obtain board for herself and her children at a small rate in the country had no proper bearing upon the question.

The court permitted the defendant, under the plaintiffs' objection, to testify to a quarrel between the defendant and the guardian just prior to the time when he wrote the letter making his demand for rent. The defendant testified that in that quarrel the guardian made threats against her, and said that where he as guardian had saved her cents he would make her pay out dollars in more ways than one. It was objected to on the ground that the quarrel and dispute between these parties had no relation to his guardianship or administratorship of the estate. We think the evidence was admissible upon the well-grounded principle that it is always proper to show the feeling of a witness towards the party against whom he testifies, and for the purpose of thereby affecting the credibility of his testimony. It was particularly proper in this case. His evidence and that of the defendant were diametrically opposed, and to such an extent that it was quite plain neither could be honestly mistaken. It has frequently been held that such evidence is proper. (*Starkes* v. *People*, 5 Den. 106 ; *Schultz* v. *Railroad Co.*, 89 N. Y. 242.)

On the whole, we think the judgment is right, and it should be affirmed.

All concur.

Judgment affirmed.